**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>   Plaintiff,<br><br>  v.<br><br>CENTERS FOR DISEASE CONTROL AND PREVENTION, et al.,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 23-0750 (RC)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT CROSS-MOTION**

Defendants Centers For Disease Control and Prevention ("CDC") and United States

Department of Human and Health Services ("HHS") (collectively "Defendants" or "Agency")

respectfully submit this Reply in Support of Defendants' Motion for Summary Judgment and

Opposition to Plaintiff's Cross-Motion for Summary Judgment.

**INTRODUCTION**

Plaintiff's opposition and cross-motion advances arguments that are plainly contrary to

established Freedom of Information Act ("FOIA") precedent and that run counter to the

undisputed facts of this case.  Plaintiff's sole claim concerns the adequacy of CDC's search.

Further, the Agency's selection of custodians was entirely appropriate, given that CDC used the

CDC personnel that would most likely be able to identify responsive material.

For these reasons, as explained in detail below, the Court should conclude that the CDC

appropriately responded to the Plaintiff's FOIA request. The Court should grant CDC's motion,

deny Plaintiff's cross-motion, and enter judgment in favor of CDC.

**ARGUMENT**

**I.    Defendants' Search Was Reasonably Calculated to Find Responsive Records**

Plaintiff's primary argument is that it believes that the CDC did not conduct an adequate search because Plaintiff is aware of the existence of other emails produced as a result of other FOIA litigation. Pl. Opp. at 5-6.  As evidence of the CDC's alleged search deficiency. Plaintiff points to a previous FOIA response from Defendants and the National Institute of Health (NIH) to an unrelated FOIA request submitted by an unrelated party, Epoch Times.  Specifically, Plaintiff alleges that the Epoch Times FOIA request, which assertedly involved the "same individuals," "topic of concern and time frame" that were identified in Plaintiff's instant FOIA request revealed certain emails that were not uncovered in the CDC's search. *Id.* at 7.  As a result, Plaintiff concludes that the CDC did not conduct an adequate search.

As shown in Defendant's Motion for Summary Judgment, in responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The established reasonableness standard by which FOIA searches are judged "does not require absolute exhaustion of the files; instead it requires a search reasonably calculated to uncover the sought materials." *Miller v. Dep't of State*, 779 F.2d 1378, 1384-85 (8th Cir. 1986); *accord Oglesby*, 920 F.2d at 68 (the agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested").

Conducting a "reasonable" search is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and is "hardly an area in which the courts should attempt to micro-manage the executive branch." *Schrecker v. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003). Thus, the declaration that "explain[s] in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate

2

compliance with the obligations imposed by the FOIA." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). Once the Court determines that the declarations are sufficient, it need not inquire further. *See Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838-39 (D.C. Cir. 2001).

Here, the Andoh declaration explains in detail the logical and reasonable approach taken to respond to the Plaintiff's FOIA request. Specifically, the CDC shows, through the Andoh Declaration, that it conducted a good faith effort to search for the records Plaintiff requested, using methods which CDC believed could be reasonably expected to produce the information requested.

As further explained by the Supplemental Declaration of Roger Andoh (Supp. Andoh Decl.), when a CDC-FOIA analyst receives a FOIA request, the FOIA analyst uses his discretion to identify the strategy and method best suited to be reasonably expected to locate potentially responsive records. Supp. Andoh Decl. ¶ 8. As a result, the CDC uses various methods to conduct searches. Plaintiff complains that the CDC did not initially conduct a direct email search in response to the FOIA request. *Id.* ¶ 12. However, as explained in the supplemental declaration, when a CDC FOIA analyst chooses to start the search for responsive material with an email search using the "Enterprise" search software platform, it normally is a result of a FOIA request seeking emails of a specific custodian(s), on a topic that can easily be translated in machine understandable terms, and for a specific date range. *Id.*

For example, in an unrelated FOIA matter concerning the instant Plaintiff, CDC performed an email search for a FOIA request that sought "all emails sent and received by Dr. Paul Rota, Dr. Bettina Bankamp, and/or Dr. Stephen Crooke, from April 1, 2023 through the date of the search, that include '@maine.gov' in any portion of an email address in the to, from, cc, and/or bcc fields." ("ICAN Other Request"). *Id.* ¶ 12. In that instance, the FOIA request

3

sought records that were related to specific CDC custodians (Dr. Paul Rota, Dr. Bettina Bankamp, and/or Dr. Stephen Crooke), on a topic that could easily be translated in machine understandable terms ("@maine.gov"), and for a specific date range (April 1, 2023 through the date of the search).  As Mr. Andoh explains, the previous ICAN request provided wording that "could easily be couched in machine understandable terms." *Id.*

Likewise, as Mr. Andoh notes, the CDC-Epoch Times request that comprises Plaintiff's only asserted evidence of deficiency, uses similar syntax to the earlier ICAN request, such that it could easily be translated in machine understandable terms. *Id.* ¶13.  In the Epoch Times request, the FOIA request sought records on specific custodians (Drs. Walensky, Collins, Fauci, and Offit via Offit's specific email addresses "OFFIT@chop.edu" and "offit@email.chop.edu" that had been provided by the FOIA requester), on a simple, generic topic of (only) meetings that could be easily translated in machine understandable terms, and for a specific date range (July 1, 2021 to January 1, 2022).

In contrast, however, Plaintiff's instant FOIA request contains the following wording:

"All records concerning any meeting held regarding whether natural COVID- 19 infections, or natural immunity, should count, qualify, or suffice in situations where the COVID-19 vaccine is mandated and where the meeting was attended by at least the following people:

Vivek Murthy (U.S. Surgeon General), Francis Collins (Former Director of the National Institutes of Health), Anthony Fauci (Chief Medical Advisor to the President, Director of the National Institute of Allergy and Infectious Diseases), Rochelle Walensky (Director of the Centers for Disease Control and Prevention), and Paul Offit (Director of the Vaccine Education Center at Children's Hospital of Philadelphia).

A. Records sought include, but should not be limited to, any recordings, transcripts, minutes, and notes taking during the meeting, as well as any reports or records used or shared with meeting participants prior to or during the meeting.

b. The timeframe of this request is for records created, modified, sent, received, or shared between January 1, 2021, and December 19, 2021."

*Id.*

Plaintiff's syntax in the instant request did not provide the same ability to easily translate the request to a search in the Enterprise format in machine understandable terms. *Id.* ¶ 14. In short, it suggested to the FOIA analyst that a shared electronic drive and calendar would be a more efficient method to locate any responsive material. The FOIA analyst reasonably determined that there was a high probability that a general Enterprise search method with keywords like "natural immunity" or "natural Covid-19 infection" (which were mentioned in Plaintiff's FOIA Request) would pull a voluminous number of records unrelated to the meetings with the individuals that Plaintiff had listed in Plaintiff's FOIA Request. *Id*. ¶ 15

Moreover, Mr. Andoh attests that a search method with keywords like "natural immunity" or "natural Covid-19 infection" would likely have pulled unresponsive records that included articles, newsletters, spam email, correspondence from the public, and possibly social media related to that broad topic. *Id.* ¶ 14. The number of voluminous records would likely have been exacerbated by the fact that, given that the topic of Plaintiff's FOIA Request was not just about "natural immunity," but also linked to "vaccine that is mandated" (or vaccine mandates, if rephrased), an Enterprise search would have pulled records on "natural immunity" or on "vaccine mandates" but would not have necessarily connected either topic to a meeting. *Id*.

Furthermore, while on its face the topic of Plaintiff's FOIA Request appeared to be specific because the wording was "natural COVID-19 infections, or natural immunity, should count, qualify, or suffice in situations where the COVID-19 vaccine is mandated and where the meeting was attended by at least the following people," from a machine perspective, Mr. Andoh points out precisely how the specific wording of Plaintiff's request would not have allowed the topic to be easily translated in machine understandable terms best suitable for an email search. *Id*. For example, the difficulties to translate the terms used in the FOIA request into machine

understandable terms is further compounded with wording like "where the meeting was attended by at least the following people," because some of the attendees were not CDC staff, and others were not even HHS staff. *Id.*

Mr. Andoh makes clear that, on its face, Plaintiff's FOIA Request was far from an obvious candidate for an email search. *Id*. ¶ 15. The FOIA analyst reasonably determined that Plaintiff's FOIA Request was not readily translated into machine understandable terms, and that the email search method used in the referenced other FOIA requests would not in this case have captured the information that Plaintiff requested as efficiently. *Id.*

Consequently, using his discretion, the FOIA analyst decided to send the search to the CDC Office of the Director so that the search could be conducted by the scheduler. *See* 1st Andoh Decl. ¶ 14 (ECF No. 16-1). In short, when a FOIA analyst believes that, due to the wording of the FOIA request, an Enterprise search method would produce too many records and that some human interpretation from the custodians of records would be the best method to accomplish the search and best manner to locate potentially responsive records, the analyst will choose a search method that starts with first contacting the custodian(s) of the records by asking them to provide input or conduct the search, versus asking a machine first. This is what happened here and explains why the searches were conducted by the scheduler. *Id.* ¶15.

Specifically, the searches were conducted by the scheduler because the scheduler is aware of all of the CDC Director's meetings and has access to records that are associated with each meeting. The scheduler for the Director also reviewed the calendar of the Director to search for any meetings regarding whether natural COVID-19 infections, or natural immunity, should count, qualify, or suffice in situations where the COVID-19 vaccine is mandated. *See id.* ¶ 14.

Plaintiff's Response further states that, although Dr. Murthy's email did not identify individuals comprising the "other scientific colleagues," an email sent by Peter Hotez, MD, PhD ("Dr. Hotez") the following day reveals that these "other colleagues" included Paul Offit, MD ("Dr. Offit"). *See* ECF 17-1 at 9. Plaintiff's Response adds that in his email, Dr. Hotez references the October 12, 2021 meeting on infection-induced immunity and states, "it was good to see everyone last night!" Plaintiff's Response also indicates that the carbon copy (cc) section of the email contained a list of the meeting attendees, which included the five individuals identified by ICAN in its request—Dr. Walensky, Dr. Murthy, Dr. Collins, Dr. Fauci, and Dr. Offit.  But it is no surprise that Dr. Hotez' email was not located as part of the initial search, because given the framing of Plaintiff's request – including its particular focus on meetings attended by specified individuals – the request was sent to the CDC Office of the Director for a search to be conducted, instead of being the subject of an Enterprise search. 1st Andoh Decl. ¶ 19.

As mentioned by Mr. Andoh, the Office of the Director searched electronically only the shared drives and calendars, which contain all preparatory materials for meetings as well as meeting briefs connected to the CDC Director, because the information sought in Plaintiff's FOIA Request related specifically to a meeting. *Id.* ¶17.

In response, the Office of the Director searched for meetings-related materials that were connected to the five names taken together.  Supp. Andoh Decl. ¶ 19.  The Office of the Director did not locate any records related to Dr. Hotez' email because, given that the topic of Plaintiff's FOIA Request was a meeting, the specific shared drives that had been searched were principally repositories of meetings related materials, rather than repositories of emails.  *Id.*  Whereas email searches would normally have been best conducted using Enterprise, due to the high probability of uncovering a voluminous number of non-responsive records if the search in this case had

7

started with an Enterprise search, the FOIA analyst decided to not start the search with Enterprise but instead with the custodians in charge of meetings for Ms. Walensky. *Id.*  The search did not locate any responsive documents. *Id.*

When the scheduler or custodians who had access to the calendar and preparatory materials for all meetings of Dr. Walensky stated that they had not located any potentially responsive records, the FOIA analyst reasonably concluded that the search efforts had been sufficient.  In other words, at that point, the FOIA analyst had no logical reason to believe that an Enterprise email search would have yielded a different result than the Office of the Director did, and that an Enterprise search would have been more reasonably expected to locate potentially responsive records. If anything, the FOIA analyst concluded that in, this context, an Enterprise search would have been a waste of government resources. *Id*. ¶ 20.

## II.    Defendants Properly Interpreted the Scope of the FOIA Request, But Even If They Did Not, Any Deficiency is Cured by the CDC's Supplemental Search

Plaintiff claims that the CDC did not conduct an adequate search because it improperly limited the scope of the FOIA Request.  However, Mr. Andoh's detailed explanation of the rationale and record keeping structure in the CDC shows that, because the FOIA request focused on a particular meeting, a reasonable and eminently logical places to search were the records of the scheduling staff that would have access to the both the shared electronic file drives and calendars of the CDC personnel identified in the request.  1st Andoh Decl. ¶ 14.  Further, as explained above, even though that might not be the search method Plaintiff would have chosen, the methodology was reasonable given the facts of this case. Supp. Andoh Decl. ¶¶ 12-13.

While the initial search was, at the time it was conducted, the best approach reasonably expected to locate potentially responsive records, to show its good faith, the CDC subsequently conducted an Enterprise email search of former Director Walensky's emails.  *Id*. ¶ 22.

Specifically, on October 3, 2023, the CDC completed an Enterprise email search. The location searched was the Microsoft Outlook email of Ms. Walensky (a former CDC employee), including all folders, inbox, sent mail, drafts, archive, trash, and Teams messages. *Id.* Mr. Andoh indicates that Ms. Walensky's email location was selected because of Plaintiff's primary assertions that Ms. Walensky's emails may have contained responsive material. Pl. Opp. 5-8; Supp. Andoh Decl. *Id.* ¶ 22. The Enterprise email search was the principal type of search that CDC had not initially conducted. Supp. Andoh Decl. *Id.* ¶ 22.

The search terms used for this Enterprise search were: "Murthy OR Collins OR Fauci OR Walensky OR Offit" AND ("Infection induced immunity" OR "natural immunity"). Supp. Andoh Decl. *Id.* ¶ 23. The search terms "Murthy," "Collins," "Fauci," "Walensky" and "Offit" were selected because Plaintiff's FOIA Request specifically requested information where "the meeting was attended by at least" these five individuals. *Id.* The search term "natural immunity" was used because it was specifically mentioned in Plaintiff's FOIA Request. *Id.* The search term "infection induced immunity" was used because it was excerpted from emails provided in Plaintiff's Response. *Id.*; ECF 17-2 at 2, 3, 5, 6. Thus, the search terms were proper in light of the details of Plaintiff's FOIA Request. *Id.* ¶ 24. In short, by using the names of the meeting participants, along with "natural immunity" and "infection induced immunity," as search terms, the search CDC conducted was a reasonable search for locating responsive records.

Mr. Andoh indicates the date range used for the search was from January 1, 2021 to December 19, 2021. This date range was selected because it was the date range provided by Plaintiff in Plaintiff's FOIA Request. *Id.* ¶ 25.

As a result of the search, Mr. Andoh states that 446 pages of potentially responsive records were identified. Upon review of these records, CDC determined that 439 pages were not

responsive.  The yield of 446 pages was largely due to the fact that Plaintiff had requested a wide date range of January 1, 2021 to December 19, 2021. However, the only meeting held in that time frame that met the criteria in Plaintiff's FOIA Request was the October 12, 2021 meeting. No other meeting satisfied that criteria. *Id*. ¶ 25. The other reason Mr. Andoh reports as to why the yield was 446 pages was because the word "Walensky" was also used as a search term within Ms. Walensky's own email inbox. *Id*.  Therefore, any record where the words "Walensky" and "natural immunity" or "Walensky" and "infection induced immunity" were present initially was flagged, even when the other four individuals listed in the request were not involved. *Id*.

However, Mr. Andoh also declares that several of the records located in the supplemental search were news articles sent to Ms. Walensky that referenced natural immunity, as well as spam mail from outside entities that referenced natural immunity. *Id*. ¶ 26.  Additionally, there were intra-agency communications between Ms. Walensky and other personnel (individuals other than the names listed in Plaintiff's FOIA Request) that mentioned natural immunity. *Id*. There were also records with Ms. Walensky and some of the other individuals listed in the request, but Mr. Andoh declares that those records were unrelated to the meeting in question and did not encompass the other individuals listed in Plaintiff's request. *Id*.  As a result of the supplemental search, on October 13, 2023, the CDC released to Plaintiff seven pages of records, with withholdings made pursuant to FOIA Exemption 6, 5 U.S.C. § 552(b)(6). *Id.*

## III.    DEFENDANT PROPERLY ASSERTED EXEMPTION 6.

Exemption 6 was applied to protect work related email addresses, work telephone numbers, and Zoom ID numbers for privacy reasons.  *Id.* at ¶ 27.  Exemption 6 provides for the withholding of matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* The Supreme

Court determined that "similar files" is not understood narrowly, but rather "[was] intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Washington Post Co.*, 456 U.S 595, 602 (1982) (citation omitted); *New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc).

This broad construction of "similar files" was necessary in view of Congress's primary purpose in enacting exemption 6, which was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Washington Post Co.*, 456 U.S. at 599; *accord Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."). Thus, the key question is whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." This requires balancing of the individual interest in privacy against any public interest in disclosure. *See Dep't of Just. v. Reps. Comm. for Freedom of Press,* 489 U.S. 749 (1989); *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). The limiting language "clearly unwarranted invasion of personal privacy" strikes "a proper balance between protection of an individual's right of privacy and preservation of the public's right to Government information by excluding those kinds of files the disclosure of which might harm the individual." *Dep't of the Air Force*, 425 U.S. at 372 (citations omitted).

"[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. DOJ*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). "Information that

11

'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492. "Even seemingly innocuous information can be enough to trigger the protections of Exemption 6." *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005). An individual's privacy interest "is not limited to [personal information] of an embarrassing or intimate nature." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007); *accord Appleton v. FDA*, 451 F. Supp. 2d 129, 145 (D.D.C. 2006).

Moreover, "where there is a substantial probability that disclosure will cause an interference with personal privacy, it matters not that there may be two or three links in the causal chain." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989). Under Exemption 6, any personal privacy interest greater than *de minimis* is considered to be "substantial." *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1050 (D.C. Cir. 2009). *See Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) see also *U.S. Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 602; accord *Gov't Accountability Project v. U.S. Dep't of State*, 699 F.Supp.2d 97, 106 (D.D.C. 2010) ("Because those email addresses can be identified as applying to particular individuals, they qualify as 'similar files' under Exemption 6....").

Here, Exemption 6 was asserted to protect work related email addresses, work telephone numbers, and Zoom ID numbers. Supp. Andoh Decl. at ¶ 28. This information clearly meets the Exemption 6 threshold requirement, as it is found in "personnel" or "similar" files and contains information that applies to a particular person in which the person has more than a de minimis interest. As noted by Mr. Andoh, the Zoom meeting information and related identifying information were withheld because, if released, the public would have access to a line that is

12

used for official duties and, as a result, it would be far more difficult for government officials effectively to use these means of communication in fulfillment of their official duties., *Id.*

In any event, there is no discernible public interest in the disclosure of the individuals' work related email addresses, telephone numbers and Zoom information. *Id.* The disclosure of such information would not shed light on the operations and activities of the government. Thus, after balancing these individuals' substantial privacy interests against a nonexistent public interest, the Agency concluded that disclosure of this information would constitute a clearly unwarranted invasion of personal privacy.

### CONCLUSION

For the reasons set forth above and in Defendants' Opening Brief, the Court should enter summary judgment in favor of Defendants.

Respectfully Submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:    /s/
BENTON PETERSON, Bar #1029849
Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20530
(202) 252-2534
*Benton.Peterson@usdoj.gov*

*Counsel for Defendant*

13